I'm Mark Neibold, representing Mr. Anguiano. The issues here are whether the search warrant that they got for the hotel room was the direct result of an illegal search, and also whether, even if they legally obtained that warrant, it states probable cause after redacting the illegally obtained information. As to the first point, the officers here testified that once there's a reason to arrest, we get a warrant. And another officer testified that there wasn't going to be any further searching until a warrant was obtained. And that's in reference to what they saw once they got in the bedroom part and knocked the cabinet or the casing or whatever it is off the wall, forcibly knocked it off and found drugs. So once they see that, they say, well, we're going to get a warrant. Getting the warrant was the direct result of that illegal conduct. Wasn't there also testimony that if we hadn't gotten consent to search the suite, we'd have frozen the premises and sought a warrant based on what they saw with Mr. Baez with the pipe and so forth when they came in? Yes, but that testimony is taken out of context because the office there is testifying. That's 70 pages either earlier or after because what he's being asked there is, what if you don't get consent? At that point, he's not even testifying about having gone in there and found the drugs. It's a totally different question in a totally different context. He's saying, that's what I would have done if I hadn't gotten consent to go in the room. In other words, he's out in the hall, and they're saying, well, what if he hadn't gotten consent? Or they might even be referring to the- Why isn't it a fair inference that that would have applied anywhere along the way? Well, because they were explicitly- If the consent didn't cover the cabinet under the sink, they'd have frozen and gotten a warrant then. Well, number one, the judge found that once they got in that room, they didn't have consent. So what they would have- So they're not operating- Now, why aren't we in the position of what the officer testified? We're in the situation. It's more than hypothetical, but of course, it didn't happen this way. But if they didn't get consent, or if the consent- They didn't get consent that was lawful, was the ultimate finding. But it seems to me that returns us to the- Would you have gotten- For purposes of the two-prong, you know, the would they have gotten the warrant anyway aspect of the test. Well, I would just ask the court to do this. The motion hearing transcript, I thought this might come up, so I made a note. I believe it's page 74 of the motion hearing transcript. That's where he's asked, what would you have do if you hadn't gotten consent? And he does say, I would have gotten a warrant. But it's at page 134, 135, where it's a totally different context. Now, they've already gone into the wall. They knocked the covering off the wall. They found the drugs. And it's at that point they say, well, we just don't get a warrant unless we are going to arrest someone. And once we found the drugs, we were going to do an arrest. So it's just not reasonable and fair or even in context to take that comment about what I would do if I didn't get consent. That's totally unrelated to this discussion. Don't we need a finding from the judge on that point? You say it's unrelated, but isn't that a question of how you interpret the testimony and we just need a factual finding? And the judge says, I believe that they would have sought a warrant anyway. Then we review that for clear error. Well, the judge said that once they wouldn't have sought a warrant but for the illegality, then you would win. But isn't that a factual question? Isn't that what Murray against the United States says that it needs to be a factual finding by the district court? The judge didn't specifically address that. I know. That's my point. Yes. Isn't that what is needed here? Yes, but it's fully developed by the record. In other words, you've got the testimony and the facts make it clear that they're exploiting that illegal search of the wall to get the warrant. I mean, that's clear. I mean, the judge decided. Well, you've got the testimony on page 74 that we would have sought the warrant anyway. What if she believes that? No, that was they were simply being asked if he didn't get consent. And I believe that was consent if not to get into the room initially. If you had not received consent, what would you have done regarding your observations and all the other things you learned that night regarding the hotel room? Yes, sir. I would have froze the room and called for a search warrant. Yes, I believe that that's before they knocked the panel off the wall and found the drugs. I don't think they had gotten to that yet. They hadn't done that. So I think it's not addressing the same situation because they were clear. I mean, if you look at 134 and 135, they're talking about what they're doing or what they thought they could have done after they find the drugs. That's clear there. So they're specifically, even if they did say that earlier, here they're making clear what they could do once they found the drugs. That's absolutely clear. Why does this? So you have to make that finding? I mean, when they go in the room with what they thought was consent authority to do it and they see the camera and the lock safe, at that point, they can certainly freeze everything and go get a warrant if they could have done it from what they saw upon entering. But instead, they thought the consent carried them on into the sink. And ultimate judicial hindsighting said, no, that was wrong. I don't see why that eliminates the independent source doctrine. Well, they're just exploiting an illegal search. I mean, what they have to live with now is the court found that staying in that room and knocking the panel off the wall was illegal. They could get in there, fine. But once they got in there, the judge said, you know that this person didn't have consent at that point to let you in there, the way that bedroom was set up. So anything they do after they notice that is illegal. And the court ruled that. The government didn't appeal it. They're stuck with that. Wait a minute. This is all plain air review. The government says because all of the focus in the district court was on the second prong of independent source. Nobody, including the district court, focused on whether a finding was needed and what it would be on would have applied otherwise. Right. The government didn't support it. They at one point mentioned a case, but they didn't really support it. But it's obvious that this is exploiting. One point mentioned a case. I think it's obvious here. I would have been the government attorney. I don't think it would have occurred to me that I needed more than the testimony on page 74. Well, the first part of the independent source doctrine is that they would have gotten the warrant even if they hadn't done that. They said, no, we wouldn't have gotten it. So you can't just hypothesize what could they have done. They said we wouldn't have gotten the warrant unless if we hadn't found those drugs. Okay. There was no plan to get a warrant. But in the time I have remaining, I'd like to just address it in terms of can this, should the case be reversed simply on the holding the district court made that these remaining facts, if you take away all the illegal facts, illegally obtained facts, does the warrant still state probable cause? And it doesn't. I mean, you've got this remote in items like the dryer sheets on the vehicle floor, the car that they found him in earlier that night. He's got a drug arrest in 2013. He had a fake DEA badge. There's a meth pipe in the living room, which the two Anguano wasn't even there when the cops came and found the meth pipe. That was Baez and I'm sorry, I forget the woman's name, but the two other people who were in the room. It's tenuous to tie that meth pipe to him when he wasn't even there, and there were two other people there who were, and they admitted drug use. So what have you got? The government says, well, the dog sniffed. Wait, wait. I thought we're tying the suppression of what was seized. Why does it have to be tied to your client if it's probable cause to obtain a warrant to search the entire suite? Well, I don't think they can get a probable cause to search the entire suite because two people, Anguano's not there. They come in, they find these other two people in the room, and they see the meth pipe. Well, at some point, Baez says, you know, what's in the safe? And he says, well, drugs, obviously. You know, the locked cabinet. Well, the officer says, where would the drugs be? And he says, well, in the RMR, obviously. I mean, that's more incriminating of him than it is of Anguano. No, but it's probable cause to get a search warrant. Yes, but that's – I don't know if the court made an explicit finding, but this is after they're already in the room and they don't even have consent to be there. In other words, that was said after it should have been clear to the officers, and as the court found, they didn't have consent to be in that room. So I don't think that's – and I don't think the court said that that's part of the probable cause or facts that go toward probable cause. I wrote them all down, and I don't think the court relied on that. But if I could just say one thing about good faith, it's not good faith to go and get a warrant where you've just knocked the panel off the wall and illegally seized drugs, which the court found. And the government didn't even raise that exception. I cite the Stigall case. They didn't say anything about it. All right. There's an obvious answer to that. All right. Thank you. Thank you, Your Honor. May it please the court. The defendant, in his reply brief at page 7, asked this court to do just as the defendant did in the district court, and that is to focus entirely on the second prong of the independent source doctrine. So I stand here a bit confused as to whether or not the defendant – Is it first or second, I thought? I'm sorry. He asked this court to focus on the second prong, the probable cause. The probable cause, yeah. Right. Just as he did in the district court. That first prong as to whether officers would have obtained a warrant absent the illegality was never at issue in the district court, and that's why it's waived, and that's why – Isn't it your burden? Is it the government's burden to show the independent source? So I'm not sure – conceptually, I'm not sure how a defendant waives the government's burden. It is the government's burden, and we satisfied that burden by putting on the evidence, and that's the testimony we've been talking about at pages 74 and 75, and we also cited the independent source doctrine at each step throughout this pretrial litigation, and at no point – But you just focused on the second prong, as I understand it. You never said there's a first prong and the judge needs to make a finding. That's correct, Your Honor, and if I could explain how that came about. The defendant was the first to file briefing after the motions hearing in this case, and in that briefing he's the first to say the independent source doctrine doesn't apply because after applying the affidavit deletion rule, there's no probable cause. The government responded to that post-trial briefing and said, yes, there was probable cause. In the government's objections to the R&R, the R&R doesn't discuss the independent source doctrine at all, and in the government's objections, the government lays out in its recitation of facts the independent source doctrine in its argument, including in its facts recitation, the fact that Officer Gruber would have obtained a warrant in the absence of any illegality. This was an objection or a comment to the PSR? This is an objection to the R&R. Oh, the R&R. The R&R, and when the defendant – You put it in the facts, but you didn't then make the argument that there is a first prong and it's satisfied, as I understand it. Correct. We put the facts in the facts section in the argument. I know. We relied on the second prong. Right. And I think that's because, Your Honor, it wasn't disputed. The only evidence here was that officers would have obtained a warrant had Govino not consented to the search of that room. Defendant here – Then it would have been easy to get a finding on it. It would have been easy, but – But now we have a dispute about what the testimony means and we have no finding. And the officers aren't inherently credible, so even if it's easy to get a finding, you need one. Arguably, you need one. And you could get one by just asking. Your Honor, certainly that probably would have been the better practice. But in an adversarial system such as ours, the parties are the ones who frame the issues for the district court. The Supreme Court has coined this the party presentation rule, and it really goes hand-in-hand with concepts of this court's practice of not entertaining arguments that are made for the first time on appeal and concepts of waiver, that where a defendant has not raised an issue, he can't save it, keep it in his back pocket, and play gotcha at the appellate level. If he had contested the fact officers would have gotten a warrant, and clearly they would have, look at all the circumstances that were going on at that time. Sergeant Cardenas testified that in his opinion, if he had just let Anguiano go and had not arrested him, it would have been negligent for him to not follow up at the hotel. And the point I really want to make is that there is no ambiguity in this record. Officer Gruber testified that at the moment, within seconds, when he walked in that hotel room after Govino let him in and he saw the meth pipe containing residue on the end table, he would have gotten a warrant based on that meth pipe, based on everything he knew from the traffic stop, if Govino had not let him in. The testimony that the defendant cites, completely different context. Under state law, Officer Gruber couldn't have arrested Govino and Baez for possession of drug paraphernalia. But state law is irrelevant to the Fourth Amendment analysis. State constraints on an officer's ability to arrest doesn't inform whether there was probable cause to search. Can I ask you about the, you discount the Earl, one of the, I'm sorry, you focus on the question of if you not received consent, what would you have done regarding your observations and all the other things you learned that night regarding that hotel room? Isn't that the question that you rely on? The answer is, I would have frozen the place and gotten a warrant. How do we read the and all the other things you learned that night regarding the hotel room? Because that's a pretty broad statement, and clearly the district court said some of the things you saw that night in the hotel room need to be suppressed. So is that necessarily as clear of a statement as you present? I think it is, Your Honor, in context. The follow-up question Officer Gruber makes clear that he said, based on what I saw, and if you look at that. What we saw. What we saw. And if you look at what the line of questioning that's going on, the discussion at that point, they are only talking about entrance into the hotel room. They haven't gone beyond that initial entrance and the observation of the meth pipe. That's what they're talking about. They haven't gotten to moving to the back bedroom. They haven't gotten to seeing the armoire. They haven't gotten to the dog sniff. They haven't gotten to popping off the sink vanity and finding four pounds of methamphetamine. The context of that testimony concerns only that meth pipe that they saw in the room. Any other testimony about when and whether they would have gotten a warrant concerned Officer Gruber's that he could not arrest these individuals in the hotel room until he had probable cause for an arrestable offense. That's a completely different scenario, and there's no dispute under these facts that Officer Gruber would have gotten a warrant. And if we even go beyond just seeing the meth pipe, look at the other lawful information they obtained, once Govino gave consent, now I also would like to correct something the defendant said. He said that the district court found that they didn't have consent to be in the back bedroom. That's not true. The district court found... That was the magistrate judge, not the district judge. Correct. But in denying in part, adopting in part, the... The district judge said that there was apparent authority to go in the bedroom and find the locked armoire. Correct. So they were lawfully... They could have gotten a warrant then. Correct. So even looking at that, the scope of that search, that the district court found to be valid, at that point they had seen the meth pipe. They knew all the facts and circumstances surrounding the traffic stop. They had also seen pound packaging in an open-top garbage can. Okay, what is pound packaging? Is it garbage bags? What is it? It's more like vacuum-sealed packaging. Oh, so like a bigger, baggy kind of... Bigger. Thank you. On its own, of course, there's an innocent explanation for it. But in the context, sometimes the sum total of the parts is bigger than the individual pieces, and that's what we have here. So the officers had seen pound packaging. They'd seen a meth pipe. They had two individuals who told them they'd recently been using drugs. They had a locked armoire with a cell phone live-streaming it. And they had, as a statement, that if there were drugs in that hotel room, they'd obviously be in the armoire. It's inconceivable to think that the officers wouldn't have gotten a warrant at that point. And in addition, there's some dispute as to the canine sniff of the Equinox. The warrant isn't entirely clear as to the sequence of events. But the motions hearing transcript is clear, that that dog sniff had occurred prior to the discovery of the drugs in the hotel room, because the dog had done the sniff before he came up to the hotel room. So we have all that evidence. It's inconceivable that officers wouldn't have gotten a warrant, at least at that point. And that's the reason it went uncontested in the district court. Of course they would have gotten a warrant. And the district court doesn't commit reversible error. I didn't see an explanation by the district court. After the court concludes that there was no consent to go into the locked armoire, and you needed a warrant to do that, to get in there. But I didn't see an explanation of why that required suppressing, when they went past the armoire and into the bathroom, why the consent that the district court upheld to go into the back didn't apply to that. Yet the court suppressed. Was that explained? It wasn't entirely explained. As a factual matter, the sink was in the back bedroom. It wasn't a separate bathroom. And what the district court held is there was no consent to pop off the top. It wasn't a destructive thing. Officer Gruber testified that he'd frequently, in that particular hotel, that's where he found people's hid things, was in there. The district court found that that should be suppressed. Why was that not counted as sentencing? I didn't understand that. The government's brief said the government agreed that he wasn't accountable for the drugs found in the sink. I thought the law was that the Fourth Amendment suppression doesn't apply at sentencing. You're correct, Your Honor, that is the law, but I will state that it didn't affect the guideline range. The range was between, I believe it's 1.5 actual to 4.5, and there was 1.78 actual kilograms of methamphetamine in the armoire and somewhere around 1 in the sink. So it didn't affect the range. My time is up, unless Your Honors have any questions. Yes, that you affirm. Can I just say one thing? I'll give you a minute for rebuttal. Just to hopefully clear this up, in the district court's memorandum opinion as part of my addendum at page 21, the court says, upon entering the back bedroom, the officers could see in plain view the elaborate cell phone surveillance system and visibly padlocked armoire. At this point, the officers became aware of facts strongly suggesting that Gavino, the woman, did not have mutual use or control of the back bedroom and that the occupant had an expectation of privacy. Thus, the officers should have known and respected that Gavino lacked authority to consent to a search of that room. But that's the R&R you're reading. No, no, that's the memorandum opinion page, district court page 21. It's in my addendum. Farther back. Okay. I thought you meant page 21. Yeah, I'm sorry. I'm with you now. So thank you for the time, Your Honor. Thank you, counsel. The case has been well briefed and argued. We'll take it under advisement.